**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
MIAMI DIVISION

CASE NO.: 18-22372-CIV-JLK

M.D., C.F., and E.M., individually
and on behalf of a class of similarly
situated person,

       Plaintiffs,

vs.

CENTENE CORPORATION, INC. and
CENTENE MANAGEMENT
COMPANY, LLC.,

       Defendants.
_____/

**MOTION TO DISMISS CLASS ACTION COMPLAINT**
**AND INCORPORATED MEMORANDUM OF LAW**

Pursuant to Rules 12(b)(1), 12(b)(6), 12(b)(7) and 19 of the Federal Rules of Civil Procedure, and Rule 7.1 of the Local Rules of the United States District Court for the Southern District of Florida, Defendants Centene Corporation, Inc. ("Centene") and Centene Management Company, LLC ("CMC" and, together with Centene, "Defendants"), move for the entry of an Order dismissing the Complaint of Plaintiffs M.D., C.F., and E.M. (collectively, "Plaintiffs").

**INTRODUCTION**

This case involves three individuals who are suing the wrong parties over the purported denial of insurance coverage for pharmaceuticals used for the treatment of hepatitis C. These drugs are known as direct-acting antiviral ("DAA") drugs. The three Plaintiffs have medical insurance through a Florida health plan, but have not sued their insurer. Instead, Plaintiffs sued a parent holding company and another affiliated entity which provides services to their health plan through a management agreement. This misguided legal strategy fails for numerous reasons.

First, this court lacks subject matter jurisdiction under Article III because Plaintiffs' claims are moot. Plaintiffs only challenge one criteria in the coverage guidelines for DAA drugs.

However, effective July 1, 2018, the challenged criteria has been eliminated from the coverage guidelines.  Thus, the only relief sought has already been provided by Plaintiffs' insurer.

Second, Plaintiffs fail to allege that Plaintiffs demonstrated eligibility for coverage.  The documents attached to the Complaint, and incorporated by reference, show that there are other coverage criteria requirements, aside from the single criteria that Plaintiffs challenge.  Plaintiffs have not satisfied the threshold requirement of establishing that they satisfied *all* the coverage criteria.  Nor have the Plaintiffs exhausted their administrative remedies by following the appeals process, which makes it impossible to determine if the challenged criteria ultimately caused the denial of coverage.

Third, Plaintiffs' tortious interference claim fails because (i) any actions taken by Defendants are privileged acts between a parent and subsidiary which legally cannot constitute tortious interference; (ii) a tortious interference claim requires a contract to be breached, but Plaintiffs cannot allege a breach or that Defendants were the "but for" cause of the breach; and (iii) Plaintiffs fail to attach the applicable contracts to the Complaint.

Fourth, Defendants cannot be unjustly enriched because Plaintiffs do not confer the requisite "direct" benefit on Defendants.  Fifth, Plaintiffs' claim for declaratory relief likewise fails because, aside from being duplicative of its other claims, declaratory relief is not available for moot claims.  Sixth, Plaintiffs' claims must be dismissed under Federal Rule of Civil Procedure 19 because Plaintiffs failed to join the insurers that denied their claims, which are necessary and indispensable parties.  Finally, Plaintiffs' choice of law allegations are defective.

## BACKGROUND

Plaintiffs claim that they were denied coverage for DAA drugs because their insurer required its insureds to demonstrate certain degrees of liver damage, known as fibrosis or cirrhosis, before reaching a classification of "medical necessity" that would trigger coverage. Compl., Introduction, ¶¶ 14-16.  These degrees of liver damage are graded by a Metavir score, from F0 to F4, with F0 being the least amount of damage and F4 being the greatest.  *See id*. ¶¶ 5, 26, fn. 5 and Exhibits B and C.  Previously, a Metavir score of F3 or F4 was required to trigger coverage of DAA drugs.  Compl., Exhibits B and C.  However, those guidelines have been amended and all insureds are now able to obtain coverage for DAA drugs regardless of their Metavir score.  *See* Post-July 1, 2018 DAA Drug Policies (attached as Composite Exhibit 1).

Plaintiffs' Florida health plan is known as Ambetter from Sunshine Health ("Sunshine

Health"). Compl., Exhibit A. Yet, Plaintiffs have intentionally avoided suing Sunshine Health for breaching the contract of insurance due to defenses they know are fatal to such a claim. Plaintiffs' lawyers have already attempted to sue an insurer for this exact same claim, but their claims were rejected due to insurmountable defenses that would apply here as well.[1]

Instead, Plaintiffs bring this putative class action against Centene and CMC. This legal strategy makes no sense. Centene is a parent holding company of various health plans, including Sunshine Health, and as such is a company with no employees. CMC provides services to various health plans, including Sunshine Health, through various management agreements. Centene is also CMC's parent. Compl., at 2. As such, Centene and CMC cannot be sued based on the denial of an insurance coverage claim by Plaintiffs' insurer.

Sunshine Health's coverage guidelines are attached to the Complaint. *See* Compl., Exhibit A, Florida Evidence of Coverage. In the event of a claim denial, the Florida Evidence of Coverage provides a multi-level appeals process, including review by an independent, third-party. Compl., Exhibit B at p. 75. The Evidence of Coverage explains that if the insured is dissatisfied with a denial, they have a right to appeal. *See id.* If they are dissatisfied with the first level of appeal, they have a right to have a second, independent review that will be binding on the insurer. *Id.* In fact, Plaintiff M.D. followed the Plans' appeal provision and her request for a DAA drug was approved. *See* Letter from Sunshine Health Sunshine Health to M.D. (July 18, 2018) (attached as Exhibit 2). Therefore, before a plaintiff can allege that a coverage policy has adversely affected them, they should exhaust their administrative remedies by following the appeals process to determine if the rationale for denial survived the appeal.

Central to Plaintiffs' Complaint is the allegation that the coverage guidelines applicable to DAA drugs (attached to the Complaint as Exhibits B and C) were applied by the insurers to determine coverage. *Id.* at ¶¶ 38-40. The Complaint does not claim that there is anything wrong with an insurer relying on guidelines and clinical policies to make coverage determinations based on medical necessity. It only alleges that DAA drugs should be "medically necessary" for all Metavir scores, rather than just F3 and F4. Compl. ¶¶ 5, 26, 40, 41-45. 69-70.

However, Plaintiffs' Complaint ignores numerous key criteria that must be met to obtain coverage for DAA drugs. Plaintiffs fail to allege that they met all of these criteria and thus were

---

[1]  *See Kondell v. Blue Cross and Blue Shield of Fla.*, 187 F. Supp. 3d 1348, 1353 (S.D. Fla. 2006) (dismissing Rivero Mestre's Complaint).

entitled to coverage.  As set forth in Exhibits B and C to the Complaint, these other coverage requirements include: (1) detectable hepatitis C infection for at least six months; (2) a prescription for DAA drugs prescribed by, or in consultation with, a gasteroenterologist, hepatologist or infectious disease specialist; (3) at least 12 years of age and weight of at least 35kg; (4) life expectancy of greater than 12 months; (5) documented sobriety from alcohol and illicit drugs for more than 6 months; and (6) agreement by member to participate in a medication adherence program.  Compl., Exhibits B & C.  In addition, effective July 1, 2018, all of the health plans at issue changed their coverage guidelines on DAA drugs, which now cover patients with Metavir scores of F0 through F4.  *See* Post-July 1, 2018 DAA Drug Policies (attached as Composite Exhibit 1).  Therefore, Plaintiffs' claims are moot.

## **LEGAL STANDARD**

Plaintiffs have the burden to prove that subject-matter jurisdiction exists over their lawsuit.  *See Elend v. Basham*, 471 F.3d 1199, 1206 (11th Cir. 2006).  A motion to dismiss for lack of subject-matter jurisdiction under Rule 12(b)(1) may be either a "facial" or "factual" attack.  *See Odyssey Marine Exploration, Inc. v. Unidentified Shipwrecked Vessel*, 657 F.3d 1159, 1169 (11th Cir. 2011).  A facial attack challenges subject-matter jurisdiction on the basis of the allegations in the Complaint, and the Court takes the allegations as true.  *See id.*  "Factual attacks challenge subject matter jurisdiction in fact," and on these the Court need not accept Plaintiffs' allegations as true.  *Tenet Healthsystem GB, Inc. v. Care Improvement Plus S. Cent. Ins. Co.*, 162 F. Supp. 3d 1307, 1309-10 (N.D. Ga. 2016), *aff'd*, 875 F.3d 584 (11th Cir. 2017).  When considering a factual attack, the "Court may consider extrinsic evidence." *United States ex rel. Osheroff v. Humana, Inc.*, 776 F.3d 805, 811 (11th Cir. 2015).[2]  Defendants' mootness argument is covered by Rule 12(b)(1).

Under Rule 12(b)(6), a complaint may not survive dismissal unless it "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).  "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions,

---

[2]   Defendants' mootness argument is covered by Rule 12(b)(1).  The coverage guidelines for DAA drugs, which no longer include the requirement for an F3 or F4 Metavir score, should be deemed to be incorporated by reference into the Complaint because they are referred to throughout the Complaint.  However, this Court can also consider them as extrinsic evidence under rule 12(b)(1).

4

and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted). "Factual allegations must be enough to raise a right to relief above the speculative level," *id.*, meaning that a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. And while the Court must accept a plaintiff's well-pleaded facts as true, it need not accept "conclusory allegations, unwarranted deductions of fact[]," *Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002), or "legal conclusion[s] couched as a factual allegation," *Iqbal*, 556 U.S. at 678. In addition, "[W]hen the exhibits contradict the general and conclusory allegations of the pleading, the exhibits govern." *Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1206 (11th Cir. 2007).

## ARGUMENT

**I.    THE COURT LACKS SUBJECT MATTER JURISDICTION BECAUSE PLAINTIFFS' CLAIMS ARE MOOT**

Plaintiffs M.D., C.F. and E.M.'s claims are not within the scope of Article III because their claims are moot, given that the insurers changed the coverage guidelines on DAA drugs, which are now covered for patients with Metavir scores F0 through F4. "If events that occur subsequent to the filing of the lawsuit or an appeal deprive the court of the ability to give the plaintiff or appellant meaningful relief, then the case is moot and must be dismissed. *See Al Najjar v. Ashcroft*, 273 F.3d 1330, 1336 (11th Cir. 2001) (dismissing case as moot where since the time the case was filed, the existence of a live dispute ceased).

"It is by now axiomatic that Article III of the Constitution limits the judicial power of the United States to the resolution of cases and controversies." *DiMaio v. Democratic Nat. Comm.*, 520 F.3d 1299 (11th Cir. 2008) (internal quotation marks omitted). In order for Article III standing to exist:

> First, the plaintiff must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Lujan vs. Defenders of Wildlife*, 504 U.S. 555, 560-61 (2008).

The doctrine of mootness has been described as "standing set in a time frame: The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness)." *Flanigan's Enter., Inc. of Ga. v. City of Sandy Springs, Ga.*, 868 F.3d 1248, 1268 (11th Cir. 2017). "[A] case is moot when it no longer presents a live controversy with respect to which the court can give meaningful relief. If events that occur subsequent to the filing of a lawsuit or an appeal deprive the court of the ability to give the plaintiff or appellant meaningful relief, then the case is moot and must be dismissed." *Miccosukee Tribe of Indians of Fla. v. United States*, 420 F. Supp. 2d 1324, 1344 (S.D. Fla. 2006) (closing case because of mootness where defendants were already in the process of implementing the relief requested) (quoting *Florida Public Interest Research Group Citizen Lobby, Inc. v. Environmental Protection Agency*, 386 F.3d 1070, 1086 (11th Cir.2004)).

Plaintiffs' claims are moot because, effective July 1, 2018, the coverage guidelines at issue for DAA drugs cover patients with all Metavir scores, F0 through F4. *See* Post-July 1, 2018 DAA Drug Policies (attached as Composite Exhibit 1). The coverage guidelines for DAA drugs affect all putative class members and eliminate the only issue in dispute, thus mooting the case and depriving this Court of subject matter jurisdiction because there is no case and controversy. The coverage guidelines on DAA drugs are at the center of this dispute, and are therefore incorporated by reference into the Complaint, and can be considered under Rule 12(b)(1).[3] Further, Plaintiff M.D.'s claim is moot because she followed the Plans' appeal provision and received coverage for a DAA drug. *See* July 18 Letter from Sunshine Health (attached as Exhibit 2).[4]

This issue is not a novel issue, and other courts have denied claims as moot where a policy of denying DAA drugs based on a Metavir score of F3 or F4 was changed to provide coverage for all Metavir scores. That was the case in *Homampour v. Blue Shield of Californoa Life & Health Insurance Co.*, in which the court stated:

---

[3]   In assessing the sufficiency of factual content and the plausibility of a claim, courts may consider documents that are undisputed and central to plaintiff's claim. *See S. Beach Skin Care, Inc. v. Dermaset, Inc.*, No. 13-CV-24645, 2014 WL 11958623, at *2 n.3 (S.D. Fla. Aug. 18, 2014) (considering the content of a website on a motion to dismiss under the incorporation by reference doctrine).

[4]   Plaintiffs' Complaint includes allegations about the claims review process for M.D. and therefore this letter is incorporated by reference. Compl. ¶ 41.

6

> A change in policy moots a claim if the policy represents a "permanent change," and is "broad in scope and unequivocal in tone" such that it indicates that recurrence of the challenged practice is unlikely. *White*, 227 F.3d at 1243. In *Iron Arrow Honor Society v. Heckler*, the Court found a claim moot on summary judgment where a formal change in policy was publicly announced, making it unlikely to be later reversed. 464 U.S. 67, 71-72 (1983) (claim was moot where a University "announced its decision to . . . the public, and the courts" such that "there is 'no reasonable likelihood' that the University will later change its mind"). In *Picrin-Peron v. Rison*, the Ninth Circuit found that a claim challenging certain provisions in a student election policy was moot where the school established a new policy and entered into a memorandum of understanding committing not to reenact the challenged provisions such that "there was no reasonable expectation that the injury the plaintiffs suffered will recur." 378 F.3d 1129, 1130-1131 (9th Cir. 2004).

2016 WL 4539480, at *5 (N.D. Cal. Aug. 31, 2016) (finding mootness where defendant "revised its entire [DAA drug] policy to extend coverage and benefits generally to all members like Plaintiffs" by including coverage for F0 and F1 scores). Therefore, as in *Homampour*, Plaintiffs' claims must be dismissed as moot.

## II. PLAINTIFFS FAIL TO SUFFICIENTLY ALLEGE THAT THEY MET ALL OF THE CRITERIA FOR DAA DRUG COVERAGE

Plaintiffs fail to adequately allege that they qualified for DAA drug coverage under their health plan. The reason for Plaintiffs' bizarre strategy of suing its insurer's parent and affiliate is because Plaintiffs' law firm has already attempted to sue insurance companies directly for this exact same claim and failed. That case was dismissed because the plaintiffs did not adequately allege they met all of the criteria, including non-Metavir score criteria, that would trigger coverage for DAA drugs. Thus, the insurer was under no contractual obligation to provide it. In *Kondell v. Blue Cross and Blue Shield of Florida*, Plaintiffs' counsel sued Blue Cross and Blue Shield of Florida ("BCBSF") claiming that it improperly denied a claim for DAA drug coverage based on not meeting the coverage guidelines, which among other things, included a Metavir score of F3 or greater. 187 F. Supp. 3d 1348, 1353 (S.D. Fla. 2006). Plaintiffs alleged that "meeting the definition of 'Medically Necessary' is the *only* requirement for coverage under the terms of the Policy." *Id*.

The Court found that the Policy, which was attached to the complaint, contradicted the allegations "that 'Medically Necessary' is the only requirement for coverage under the terms of the Policy." *Id*. at 1356. The Court found that, in addition to "Medically Necessary," the Policy

7

contained numerous additional coverage criteria, and concluded that the insurer could "rely on its coverage and payment guidelines in effect at the time a coverage decision is made." *Id*. Because the Plaintiffs never alleged that they met these additional criteria, they could not allege that they satisfied the necessary conditions to obtain coverage. *Id*. The Court therefore dismissed the case with prejudice, given that any amendment would be futile. *Id*.

This case is similar to *Kondell* because Plaintiffs' Complaint ignores the additional criteria required to trigger coverage for DAA drugs. The policies include numerous key criteria that govern the coverage of DAA drugs. Compl. Exhibits B and C. Yet, Plaintiffs ignore all of these requirements, focusing instead only on a Metavir score of F3 or F4. As these DAA drug policies state, there are other requirements, all of which must be met, including: (1) detectable hepatitis C infection for at least six months; (2) a prescription for DAA drugs prescribed by, or in consultation with, a gasteroenterologist, hepatologist or infectious disease specialist; (3) at least 12 years of age and weight of at least 35kg; (4) life expectancy of greater than 12 months; (5) documented sobriety from alcohol and illicit drugs for more than 6 months; and (6) agreement by the member to participate in a medication adherence program. *See* Compl. Exhibits. B and C.

Fatal to Plaintiffs' claims, the Complaint does not allege that Plaintiffs met all of these criteria, even though Plaintiffs' Complaint does not contest the validity of any of these requirements. Without alleging that the Plaintiffs met all of these other criteria, Plaintiffs cannot sufficiently allege that any denial of coverage was improper. Clearly, there can be no tortious interference or unjust enrichment by Centene or CMC because Plaintiffs' insurer did not breach the contracts with its insureds.

As in *Kondell* and *Homanpour*—Plaintiffs have no claim. The Complaint admits that the insurer of M.D., C.F. and E.M relies on its internal guidelines and clinical policies to make coverage determinations. *Id*. ¶ 38. The Complaint also admits that these internal guidelines and clinical policies are provided to internal claims reviewers. *Id*. ¶ 39. The Complaint does not claim that there is anything wrong with applying internal guidelines and clinical policies to make coverage determinations based on medical necessity. Nor does it allege that any of the other criteria for coverage of DAA drugs are improper, much less satisfied by the Plaintiffs. Thus, Plaintiffs' fail to state a claim.

### III.   PLAINTIFFS FAIL TO STATE A CLAIM FOR TORTIOUS INTERFERENCE

Plaintiffs' tortious interference claim fails because: (1) Defendants' conduct is justified

and therefore immune from liability because they are not "strangers" to the contract; (2) Plaintiffs cannot establish causation because they had the ability to seek appellate review, including independent external review of the coverage decision, and such decision could not have been influenced or "interfered with" by Defendants; and (3) Plaintiffs fail to attach the policies at issue, which they claim were interfered with.

The elements of a claim for tortious interference with a contract are: (1) the existence of a contract; (2) defendant's knowledge of the contract; (3) defendant's intentional procurement of the contract's breach (4) the absence of any justification or privilege; and (5) damages resulting from the breach. *See Johnson Enters. of Jacksonville, Inc. v. FPL Group, Inc.*, 162 F. 3d 1290, 1321 (11th Cir. 1998).

### A. Defendants' Purported Interference Was Justified And Privileged

A critical element of a claim for tortious interference is the absence of any justification or privilege. Plaintiffs' Complaint fails to satisfy this element for two reasons. First, Plaintiffs fail to allege the *absence* of any justification or privilege with respect to Defendants. This omission, on its own, requires dismissal of Plaintiffs' tortious interference claim. *Security Title Guar. Corp. of Baltimore v. McDill Columbus Corp.*, 543 So. 2d 852 (Fla. 2d DCA 1989) ("[P]laintiff must show that the defendant acted without justification.")

Further, Defendants are not third parties (or "strangers") to the insurers. Under Florida law, to meet the element that the interference was not "privileged" or "justified"—the defendant must be a third party, a stranger to, and external to the business relationship, and there can be no tortious interference if a parent has a financial interest in the conduct or contractual relations of a subsidiary. *Johnson Enters.*, 162 F. 3d at 1321-22 (holding that parent had requisite financial interest in subsidiary to invoke its privilege of intervening in a contact); *Int'l Mulch Co. v. Novel Ideas, Inc.*, No. 14-CV-3024, 2015 WL 12830375, at *4 (M.D. Fla. 2015) (finding privilege applicable to the defendant, who was an owner and officer of the party he purportedly tortiously interfered with, and was not a stranger); *Traco Int'l. S.A. v. Kromka*, 706 F. Supp. 2d 1283, 1289 (S.D. Fla. 2010) ("A defendant is not a stranger to a business relationship if the defendant has any beneficial or economic interest in, or control over, that relationship.") (internal quotations omitted); *Salit v. Ruden, McClosky, Smith, Schuster & Russell, P.A.,* 742 So. 2d 381, 386 (Fla. 4th DCA 1999) ("For the interference to be unjustified, the interfering defendant must be a third party, a stranger to the business relationship."); *Genet Co. v, Annheuser Busch, Inc.*, 498 So. 2d

9

683 (Fla. 3d DCA 1986) (holding that defendant could not tortiously interfere because it was not a stranger to the contract); *Ethyl Corp. v. Balter,* 386 So. 2d 1220, 1225 (Fla. 3d DCA 1980) (same).[5]

In the first two pages of the Complaint, Plaintiffs allege that: (1) Celtic is an insurer, (2) that CMC is Celtic's parent; and (3) that Centene is CMC's parent.  Even taking these allegations as true, the Complaint admits that Centene and CMC are not external (or "strangers") to the contractual relationship between Plaintiffs and their insurer, and that any actions taken by Defendants would be in their own financial interests. In doing so, the Complaint states:

- Defendants and Celtic have a parent-subsidiary relationship and that both Celtic and CMC are subsidiaries of Defendant, Centene.  Compl. at p. 2 & ¶¶ 17-18.

- CMC and Centene created nationwide guidelines and instruction manuals that specified how Celtic (and the other insurer subsidiaries) should apply the definition of "medical necessity" to particular drugs, including the DAA drugs, and required the insurer's claims reviewer to apply those guidelines.  *Id.* at ¶¶ 38-40.

- Defendants' created the guidelines to save money.  *Id.* at ¶¶ 49, 80.

These allegations admit that Defendants' are not "strangers."

Plaintiffs also ignore Florida's very strong corporate separateness doctrine and the high burden for piercing the corporate veil. Parent-subsidiary relationships do not destroy corporate separateness.  "Parent corporations and their subsidiaries are separate and distinct legal entities and a parent is not liable for the torts of its subsidiaries or contracts entered into by its subsidiary."  *Cooper v. Paul Revere Life Ins. Co.*, 09-CV-1870, 2010 WL 11507084, at *2 (M.D. Fla. Aug. 12, 2010) (quoting *American Intern. Group, Inc. v. Cornerstone Businesses, Inc.,* 872 So. 2d 333, 336 (Fla. 2d DCA 2004)); s*ee In re Homelands of DeLeon Springs, Inc.*, 190 B.R. 666, 670 (Bankr. M.D. Fla. 1995) (declining to pierce corporate veil, holding, "[I]t is a legitimate

---

[5]    S*ee also Perry v. Unum Life Insurance Co. of America*, 353 F. Supp. 2d 1237, 1241 (N.D. Ga. 2005) ("[A] parent corporation cannot be a stranger to its subsidiaries' business or contractual relations."); *Seabury Management Inc. v. Professional Golfer's Ass'n of America, Inc*., 878 F. Supp. 771 (D. Md. 1994) ("A parent corporation has a privilege to interfere to protect its economic interests.")  Further, Florida law recognizes that "actions taken to safeguard or protect one's financial interest are privileged; s*ee, e.g., Abruzzo v. Haller*, 603 So. 2d 1338, 1339-40 (Fla. 1st DCA 1992) ("An agent of a corporate party to a contract . . . cannot be considered to be a separate entity outside of the contractual relationship which can tortiously interfere with that relationship.").

corporate purpose to set up a corporation to be a real estate holding company" and "to set up a corporation to be an operating company," and reasoning "[t]hose who seek to pierce the corporate veil carry a very heavy burden."). Notably, the Complaint here contains no allegations about corporate veil piercing. *See Fox v. Loews Corp.*, 309 F. Supp. 3d 1241, 1249 (S.D. Fla. 2018) (dismissing complaint for plaintiff's failure to "explain how the remaining named Defendants are responsible for conduct he attributes to the unnamed subsidiaries.").

In addition, Plaintiffs fail to allege facts showing how Defendants' actions were improper. Plaintiffs' Complaint includes conclusory allegations that Defendants induced Plaintiffs' insurer to breach the insurance contracts through "willful, oppressive, and malicious means, including Celtic's breach through fraud and deception by misrepresenting that the [DAA drugs], does not satisfy the insurance policies' definition of medical necessity." Compl. ¶ 73. Plaintiffs fail to offer any facts to support these allegations and without more, Plaintiffs' allegations do not establish an improper purpose. *See Int'l Mulch Co.,* 2015 WL 12830375, at *5 (finding that plaintiff's conclusory allegation that defendant "used improper means, acted in bad faith, and acted out of self-interest in intentionally interfering" with the contract was not supported by any facts and therefore insufficient to establish an improper purpose); *see also, e.g.*, *Iqbal*, 556 U.S. at 678 (holding that a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

Further, Plaintiffs' allegations that Defendants' actions were financially motivated negate any claimed "improper purpose." *See, e.g.*, *Freeman Management Corp. v. Shurguard Storage Centers*, LLC, 461 F. Supp. 2d 629, 641 (M.D. Tenn. 2006) (finding that the allegations did not support the improper motive requirement and that "the only reasonable inference to be drawn, . . . was that defendant was motivated purely by its own business interests, in the pursuit of which it caused incidental harm to Plaintiffs"). Even if Defendants' guidelines are in their economic interest, this is an admission of privileged conduct. Further, Defendants' guidelines applicable to DAA drugs state in the "Important Reminder" section that they are supported by extensive peer-reviewed medical literature, which is cited in the "References" section of the guidelines. Compl., Exhibit B at 5-7, and C at 6-9. This contradicts any inference of an improper purpose. Nevertheless, Florida law is clear that even if any conduct at issue involved animosity or malice, that still does not constitute tortious interference under Florida law. *Menendez v. Beech Acceptance Corp.*, 521 So. 2d 178, 180 (Fla. 3d DCA 1988) (finding that

11

conduct engaged in to protect one's own financial interest, even if tinged with animosity or malice, does not give rise to tortious interference). Therefore, Plaintiffs' tortious interference claim should be dismissed with prejudice.

### B. Plaintiffs Cannot Establish That Defendants Were A But-For Cause Of The Purported Breach

For Plaintiffs to succeed in their tortious interference claim, they must show that Defendants were the "but-for" cause of the breach. *ISS Cleaning Services Group, Inc. v. Cosby*, 745 So. 2d 460 (Fla. 4th DCA 1999) (stating that the plaintiff must establish that the agreement, "in all probability would have been completed if the defendant had not interfered"). The "representative" Evidence of Coverage (attached to the Complaint as Exhibit A) negates this element. The policy explains that if an insured is dissatisfied with a denial of coverage, they have a right to appeal. *See* Compl., Exhibit B at p. 75. If they are dissatisfied with the first level of appeal, they have a right to have an independent, third party review that is binding. *Id*.

As a result, it is impossible for Plaintiffs to claim that Defendants tortiously interfered with the contract and were the "but-for" cause of the breach, where Plaintiffs do not allege that they participated in the appellate process, including independent review, to determine if denial of coverage was sustained on appeal. In fact, one Plaintiff, upon pursuing the appellate process, was approved for coverage. This is even more meaningful when the ultimate decision-maker with respect to coverage of the DAA drugs is an independent, third-party reviewer who conducts an external review. The Complaint includes no allegation that Plaintiffs pursued, much less completed, this multi-level appeals process. This negates Plaintiffs' tortious interference claim.

### C. Plaintiffs Fail To Attach The Specific Contracts At-Issue

A complaint based upon a written instrument fails to state a cause of action until the instrument, or relevant part thereof, is attached or incorporated into the complaint. *See Kruse v. Mass. Mut. Life Ins. Co.*, No. 17-CV-61115, 2017 WL 3494334, at *5 (S.D. Fla. Aug. 15, 2017) (concluding that "a complaint based on a written instrument does not state a cause of action until the instrument or an adequate portion thereof, is attached to or incorporated in the complaint.").[6]

---

[6] *See also Samuels v. King Motor Co. of Fort Lauderdale*, 782 So. 2d 489, 500 (Fla. 4th DCA 2001) (quoting *Safeco Ins. Co. of Am. v. Ware*, 401 So. 2d 1129, 1130 (Fla. 4th DCA 1981)); *Contractors Unlimited, Inc. v. Nortrax Equip. Co. Southeast*, 833 So. 2d 286, 288 (Fla. 5th DCA

To state a claim for tortious interference, the plaintiff must allege an underlying breach of contract. *See Johnson*, 162 F. 3d at 1321. Plaintiffs' nationwide putative class action alleges that Defendants "intentionally interfered with, and induced Celtic to breach the ***Policies***." Compl. ¶ 73. Plaintiffs fail to attach these policies, or even identify each of these policies, including the provisions allegedly breached. Plaintiffs' failure to do so warrants dismissal**.**

### IV. PLAINTIFFS' UNJUST ENRICHMENT CLAIM MUST BE DISMISSED BECAUSE NO DIRECT BENEFIT WAS CONFERRED ON DEFENDANTS

Plaintiffs ask this Court to make vast leaps in logic to find that the payment of premiums to one company constitutes unjust enrichment to its parent and affiliates. A party cannot bring an unjust enrichment claim where the conduct at issue is covered by a contract.[7] A necessary condition of a claim for unjust enrichment is that the benefit conferred on the defendant must be "*direct*, not indirect or attenuated." *Id.* at *6. As the Eleventh Circuit recently held, "[T]he benefit conferred on the defendant [to state a claim for unjust enrichment under Florida law] must be a direct benefit." *Johnson v. Catamaran Health Sols., LLC*, 687 F. App'x 825, 830 (11th Cir. 2017) (affirming dismissal of unjust enrichment claim for failure to allege a sufficiently direct benefit) (emphasis in original).[8]

---

2002) ("A complaint based on a written instrument does not state a cause of action until the instrument or an adequate portion thereof, is attached to or incorporated in the complaint.").

[7]     Of course, one cannot sue on an "implied" contract when an actual contract governs the rights and responsibilities of the parties, as here. *In re Managed Care*, 185 F. Supp. 2d 1310, 1337-38 (S.D. Fla. 2002). An unjust enrichment claim can only be plead in the alternative if one or more of the parties contest the existence of an express contract governing the subject matter of the dispute, and such is not the case here. *Webster v. Royal Caribbean Cruises, Ltd.*, 124 F. Supp. 2d 1317, 1326 (S.D. Fla. 2000); *ThunderWave Inc. v Carnival Corp.*, 954 F. Supp. 1562, 1566 (S.D. Fla 1997). "Unjust enrichment is an equitable cause of action that is unavailable where the underlying wrongs are properly addressed by a legal remedy." *Licul v. Volkswagen Group of Am., Inc.*, 13-CV-61686, 2013 WL 6328734, at *7 (S.D. Fla. Dec. 5, 2013).

[8]     *See also Kopel v. Kopel*, 117 So. 3d 1147, 1152-53 (Fla. 2013) (holding a plaintiff's payment of approximately $1.8 million into two corporations in which the defendant had two-thirds ownership stakes constituted only an "indirect" benefit to the defendant that could not support an unjust enrichment claim), *rev'd on other grounds*, 2017 WL 372074 (Fla. Jan. 26, 2017); *Peoples Nat'l Bank of Commerce v. First Union Nat'l Bank of Fla., N.A.*, 667 So. 2d 876, 879 (Fla. 3d DCA 1996) (per curiam) (affirming dismissal unjust enrichment claim due to the lack of any benefit conferred directly on defendant). Courts have applied this principle to providers seeking reimbursement from insurers through unjust enrichment claims. *See, e.g.,*

Here, Plaintiffs fail to allege any cognizable direct benefit that they conferred directly on Defendants. Rather, Plaintiffs simply allege that Defendants were "unjustly enriched, through the payment of insurance premiums to purchase and maintain the Policies" and that they should not retain "the ill-gotten benefits they received from Plaintiffs and Class Members." Compl. ¶ 76. However, the Complaint alleges that insurance premiums were paid to a non-party insurer, not to the Defendants. Compl. at p. 2. Plaintiffs do not allege any direct dealings with CMC or Centene that would establish a basis for a quasi-contract, and therefore the Complaint is devoid of any "direct" benefit that Plaintiffs conferred on Defendants. Crucially, Plaintiffs omit any allegation that their premiums are paid directly to Defendants, Centene and CMC. Thus, this count must be dismissed.

## V.   PLAINTIFFS FAIL TO STATE A CLAIM FOR DECLARATORY RELIEF

To receive declaratory relief, "plaintiffs must establish that there was a violation, that there is a serious risk of continuing irreparable injury if the relief is not granted, and the absence of an adequate remedy at law." *Central Magnetic Imaging Open MRI of Plantation, Ltd. v. State Farm Mutual Automobile Ins. Co.,* 789 F. Supp. 2d 1311, 1317 (S.D. Fla. 2011) (quoting *Bolin v. Story,* 225 F.3d 1234, 1242 (11th Cir. 2000)). Plaintiffs' declaratory judgment request is moot because, as explained above, the insurers at issue provide coverage for DAA drugs for patients with all Metavir scores. *See Santa Rosa County v. Administration Commission, Division of Administrative Hearings*, 661 So. 2d 1190, 1191-93 (Fla. 1995) (declaratory judgment action concerning constitutionality of statutes moot following parties' resolution of dispute because further litigation would only be to resolve "hypothetical" issues); *Ahearn v. Mayo Clinic*, 180 So. 3d 165 (Fla 1st DCA 2015) (granting summary judgment on declaratory relief where in the middle of the case hospital defendant waived the fee in controversy and therefore "the requisite personal interest that exist[ed] at the commencement of the litigation" did not "continue throughout the existence of the case.") Therefore, this claim must be dismissed.

## VI.   PLAINTIFFS FAIL TO JOIN NECESSARY PARTIES

---

*Hialeah Physicians Care, LLC v. Conn. Gen. Life Ins. Co.*, No. 13-CV-21895, 2013 WL 3810617, at *4 (S.D. Fla. July 22, 2013) ("[A] third party providing services to an insured confers nothing on the insurer except, a ripe claim for reimbursement, which is hardly a benefit.").

14

Plaintiffs' Complaint fails pursuant to Federal Rule of Civil Procedure 12(b)(7) for failure to join indispensable parties. The failure to join an indispensable party is fatal to a cause of action. *See* Fed. R. Civ. P. 12(b)(7). In considering a Rule 12(b)(7) motion, the Court applies the standards of Federal Rule of Civil Procedure 19 to determine whether dismissal is appropriate. *Laker Airways, Inc. v. British Airways, PLC*, 182 F.3d 843, 847 (11th Cir. 1999). First, the Court must determine whether the absent party is a necessary party that should be joined under Rule 19(a). *See* Fed. R. Civ. P. 19; *Laker Airways*, 182 F.3d 843, 847.

If the party should be joined under Rule 19(a), but for some reason cannot be, the Court then proceeds to the second part of the analysis, which is contained in Rule 19(b). *Id.* Under Rule 19(b), the Court must decide whether "in equity and good conscience" the suit should proceed without the necessary party. *Id.* Under Rule 19(a), "[w]hether a particular nonparty is necessary to an action is heavily influenced by the facts and circumstances of each case." *BankUnited, N.A. v. Milliman, Inc.*, No. 15-CV-1357, 2015 WL 13333187, at *4 (M.D. Fla. July 24, 2015). When making its determination, the Court must consider whether complete relief can be granted with the present parties, and whether the absent party has an interest in the disposition. Fed. R. Civ. P. 19(a).

Plaintiffs allege that: (1) they have a contract of insurance; (2) their insurer is responsible for coverage determinations; and (3) their insurer denied coverage for certain medical treatment. Compl. ¶ 2. Plaintiffs' Complaint, as pled, does not permit the redress of Plaintiffs' alleged injuries because without including the insurers, which make the coverage determinations, there can be no relief.

As Plaintiffs allege, the insurer has broad discretion to make benefit determinations. *See* Compl., Exhibit A at 80 ("We have the full power, authority, and discretion to construe and interpret any and all provisions of this contract to the greatest extent allowed by applicable law.") Therefore, failure to join the insurers who denied their claims would leave Plaintiffs in the exact same position (ignoring the fact that (1) Plaintiffs are now eligible for DAA drug coverage regardless of their Metavir score, and (2) one Plaintiff has already obtained DAA drug coverage by following the appeals process). This is the precise kind of incomplete relief that renders an absent party necessary. *See, e.g.*, *Focus on the Family v. Pinellas Suncoast Transit Auth.*, 344 F.3d 1263, 1280 (11th Cir. 2003) (finding that a nonparty was required when complete relief could not be afforded in the nonparty's absence, as the defendant transit authority could not

15

require the running of a particular advertisement on bus shelters owned by the nonparty); *Laker Airways*, 182 F.3d at 848 ("[The absent party] is the only entity that can allocate slots at Gatwick Airport. Without [absent party], [Defendant] would not be able to manipulate . . . the slot allocation process.");

If the required parties cannot be joined, the Court must engage in the second step of the analysis under Rule 19(b). In doing so, the Court balances four factors in determining whether a necessary absent party is indispensable: (1) the Court cannot accord complete relief among the existing parties; (2) prejudice would result to the absent party's ability to protect itself in the instant action; or (3) the nonparty's absence would create a substantial risk that the existing parties would incur inconsistent or duplicative obligations.[9] *Hallums v. Infinity Ins. Co.*, 16-CV-24507, 2018 WL 1009277, at *3 (S.D. Fla. Feb. 20, 2018).

These factors mandate dismissal. First, Plaintiffs' claims against Defendants are contingent upon improper claim denials by Plaintiffs' insurer, yet this Court cannot rule on the proprietary of the coverage determinations without the insurer. Second, interpretations of insurance coverage determinations, without the insurers, would prejudicially deprive the insurers of their ability to defend their own decisions. Further, by failing to join the insurers, Plaintiffs seek to circumvent their contractual rights in order to derive a better bargain than the arms-length bargain they made with their insurers.[10] As pled, the insurers could be sued in a separate class action, by separate Plaintiffs' counsel, over the same issues raised in this lawsuit, which undoubtedly could give rise to inconsistent and competing obligations. This is not speculation, given that Plaintiffs' counsel has previously sued insurers directly over this same issue. Accordingly, the insurers are indispensable parties and this case should be dismissed.[11]

## VII. PLAINTIFFS' CHOICE OF LAW ALLEGATIONS ARE DEFECTIVE

---

[9] These factors are "not intended to exclude other considerations"; "pragmatic considerations" play a key role. Fed. R. Civ. P. 19 advisory committee's notes.

[10] Plaintiffs did not bring an action directly against their insurers, the more proximate party in interest, likely in part because insurers have broad "discretion to determine the limits of reimbursement," especially when made "reasonably and in good faith," as here. *Hickman v. Gem Insurance Co., Inc.*, 299 F.3d 1208 (10th Cir. 2002) (granting summary judgment in favor of defendant insurer and holding that insurers have broad discretion to interpret plan scope).

[11] The Complaint does not identify all the insurers that serve the putative class. This adds an additional layer of confusion that the Complaint fails to address.

When a federal court exercises diversity jurisdiction, it must apply the choice of law rules of the forum state to determine which substantive law governs the action. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). This action was commenced in Florida federal court pursuant to the Class Actions Fairness Act of 2005 ("CAFA"). The Court must therefore determine which state's substantive law the Florida Supreme Court would choose to govern Plaintiffs' claims. *U.S. Fid. & Guar. Co. v. Liberty Surplus Ins. Corp.*, 550 F.3d 1031, 1033 (11th Cir. 2008).[12] Plaintiffs fail to specify which state laws apply to their claims. Pursuant to Florida's choice-of-law rules, and for purposes of this Motion, Defendants apply Florida law as the named Plaintiffs reside in Florida and their alleged injuries occurred in Florida.[13] However, Plaintiffs' failure to sufficiently allege which state laws apply, renders the Complaint defective.

## CONCLUSION

For the foregoing reasons, the Court should grant this motion and enter an Order dismissing the Complaint.

---

[12] To choose the substantive law for a tort claim, such as a claim for tortious interference, Florida courts use the "most significant relationship" test. *Bishop v. Fla. Specialty Paint Co.*, 389 So.2d 999, 1001 (Fla.1980) (adopting the Restatement (Second) of Conflict of Laws § 145 (1971)). The Florida Supreme Court has recognized that "[t]he state where the injury occurred would, *under most circumstances*, be the decisive consideration in determining the applicable choice of law." *Bishop*, 389 So.2d at 1001. For unjust enrichment, which is in the nature of a contract claim, the test is that of *lex loci contractus*, which looks to the place where the contract was executed. *See In re NationsRent Rental Fee Litigation*, No. 06-CV-60924, 2009 WL 636188, at *10 (S.D. Fla. Feb 24, 2009) ("An unjust enrichment claim is one in the nature of quasi-contract. Florida's choice of law as to contracts is that of *lex loci contractus*, which looks to the place the contract was executed.").

[13] Plaintiffs are pursuing a nationwide class action. When the significant relationship and *lex loci contractus* tests are applied to the nationwide class that Plaintiffs purport to represent, the result will be that the law of all applicable states will have to be applied and the Court will have to analyze each class member's claim under the law of his or her home state. Such a task would make this case unmanageable, given that such an action would dwarf any common issues of fact implicated by the lawsuit. Further, Plaintiffs' claims for tortious interference and unjust enrichment are lumped into two counts, even though these claims purport to cover the laws off all relevant states (which makes no sense). All of this will present an insurmountable hurdle for Plaintiffs' purported class action because the variations in the states' laws are "sufficiently substantial to cause individual issues of law to predominate over supposed common issues." *Montgomery v. New Piper Aircraft, Inc.*, 209 F.R.D. 221 (S.D. Fla. June 26, 2002). Defendants will brief this issue at the appropriate time.

Dated: August 6, 2018

                      Respectfully submitted,
                      HOGAN LOVELLS US LLP
                      600 Brickell Avenue
                      Suite 2700
                      Miami, Florida  33131
                      Telephone:     (305) 459-6500
                      Facsimile:       (305) 459-6550

                      By:   /s/ *Marty Steinberg*
                           Marty Steinberg
                           Fla. Bar No.: 187293
                           Email: marty.steinberg@hoganlovells.com
                           Craig H. Smith
                           Fla. Bar No.: 96598
                           Email: craig.smith@hoganlovells.com
                           David Massey
                           Fla. Bar No.: 86129
                           Email: david.massey@hoganlovells.com

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on August 6, 2018, a true and correct copy of the foregoing was electronically filed with the Clerk of Court using CM/ECF. Copies of the foregoing document will be served upon interested counsel via transmission of Notices of Electronic Filing generated by CM/ECF.

By: __/s/ *Marty Steinberg*__