**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**

CASE NO.: 1:18-cv-22372-JB

M.D., C.F., and E.M., individually
and on behalf of a class
of similarly situated persons,

      Plaintiffs,

v.

CENTENE CORPORATION, INC. and
CENTENE MANAGEMENT
COMPANY, LLC,

      Defendants.

_____/

## FINAL ORDER APPROVING CLASS SETTLEMENT, AWARDING ATTORNEYS' FEES AND COSTS, AND ENTERING RULE 54(b) JUDGMENT ON CLASS CLAIMS

      This matter is before the Court on Plaintiffs' Motion for Final Approval of Class Action

Settlement, Application for Service Awards, Application for Attorneys' Fees and Expenses, and

Memorandum of Law in Support filed on April 21, 2020 ("Plaintiffs' Motion" or "Motion").  ECF

No. [53].  Plaintiffs' Motion was filed with the consent and without opposition of Defendants

Centene Corporation, Inc., and Centene Management Company, LLC (collectively, "Centene").

*Id.* at 1.  Plaintiffs assert that they have complied with the Court's Preliminary Approval Order,

and now request that the Court approve the terms of the parties' Settlement Agreement and Release

(the "Settlement Agreement," "Settlement," or "Agreement"), ECF No. [35-1], which includes an

incentive award for the class representatives and attorneys' fees and costs for Plaintiffs' counsel.[1]

---

[1] Other capitalized terms not otherwise defined in this Order have the meanings assigned to them
in the parties' Settlement Agreement, ECF No. [35-1].

The Court held a Fairness Hearing on May 5, 2020.  ECF No. [57].  Only counsel for the parties appeared; no Class Member or objector appeared to present argument or opposition.

After careful review of the Motion, the relevant authorities, the record, and for the reasons discussed below, Plaintiffs' Motion, ECF No. [53], is **GRANTED**.  The class action settlement, as set forth in the parties' Settlement Agreement, is approved as a Final Order of this Court.  In addition, the service awards to the class representatives and its attorneys' fees and expenses are also approved.  A Federal Rules of Civil Procedure 54(b) Judgment is hereby entered on all Class claims, with the Court retaining jurisdiction to enforce the Settlement Agreement.

### I.      Background

On June 13, 2018, Plaintiffs M.D., C.F., and E.M., on behalf of themselves and all similarly situated persons, filed the Complaint against Centene alleging that Centene had instructed its subsidiaries to apply certain Metavir score restriction, which measure the degree of liver damage, in considering whether to cover treatments of hepatitis C.  ECF No. [1] ¶¶ 14–16.  Hepatitis C is a serious disease that can result in long-term health problems, and even death.  *Hepatitis C Information*, CENTER FOR DISEASE CONTROL AND PREVENTION, https://www.cdc.gov/hepatitis/hcv/hcvfaq.htm#section1 (last visited June 11, 2020).  Specifically, Plaintiffs allege that the use of Metavir score restrictions led to the denial of coverage for Harvoni, a direct-acting antiviral ("DAA") treatment for hepatitis C.[2]  ECF No. [1]. ¶¶ 3–5.  The Complaint included claims for tortious interference and unjust enrichment, seeking declaratory and injunctive relief.  ECF No. [1].

---

[2] "HARVONI transformed hepatitis C (Hep C) treatment as the first cure that's one pill, once a day for the majority of patients.  Cure means the Hep C virus is not detected in the blood when measured [three] months after treatment is completed."  HARVONI, https://www.harvoni.com/discover-harvoni/treatment-with-harvoni (last visited June 11, 2020).

On August 6, 2018, Centene filed its Motion to Dismiss arguing that Plaintiffs' claims were moot because Centene had eliminated the disputed guidelines, effective July 1, 2018, and was covering patients with all Metavir scores. ECF No. [14] at 1–2. Additionally, Centene argued that Plaintiffs failed to allege that they met all of the criteria for DAA coverage; failed to state a claim for tortious interference; failed to state a claim for declaratory relief; failed to join necessary parties; failed to sufficiently allege which state laws apply; and that the unjust enrichment claim should be dismissed because no direct benefit was conferred on Defendants. *Id.* at 5–17.

Following Centene's Motion to Dismiss, ECF No. [14], the parties' counsel engaged in negotiations for approximately six months until reaching a settlement on February 26, 2019. ECF No. [26]. On May 24, 2019, Plaintiff filed their Unopposed Motion for Preliminary Approval of the Class Action Settlement Agreement and Certification of the Class, ECF No. [29], which was later amended on July 19, 2019, ECF No. [35]. On October 30, 2019, this Court preliminarily certified the Settlement Class and approved the Settlement Agreement ("Preliminary Approval"). ECF No. [44] at 2.

## II. The Approved Settlement

### A. The Settlement Class

The Class Members are insureds that had health insurance coverage through a Centene subsidiary and were denied coverage based on use of a Metavir score. Specifically, the Settlement Class is defined as:

> [A]ll persons currently or formerly covered under any individual health insurance plan or policy with a medical benefit or prescription drug benefit (or both) insured or administered by any Centene-related Entity whose request for prior authorization for coverage of hepatitis C was denied based on a Metavir score or level of fibrosis between October 1, 2014, and December 31, 2018, who have not subsequently received direct acting antiviral therapy.

3

ECF No. [35-1] at 2.  The parties estimate that the Settlement provides approximately up to 1,500 Class Members with an actual, immediate, and substantial benefit.  ECF No. [53] at 4, 14, 18.

### B.        Class Relief and Release

Under the terms of the Settlement Agreement, Centene agreed (absent certain exceptions) to not reinstate fibrosis restrictions as a basis to deny coverage for the hepatitis C drugs under Centene's medical coverage guidelines.  ECF No. [35-1] ¶ 3.  The Settlement Agreement covers any person who was previously denied coverage and any person seeking coverage in the future. *Id.*  Centene also agreed to make reasonable attempts to provide notice to any Class Member who was previously denied coverage for the hepatitis C drug and who has not since received the drugs from a Centene-related entity, to advise them that there is no longer any fibrosis restriction in the coverage policy for the drugs, and to advise them that they may resubmit their request for coverage if they currently have an individual insurance plan or policy through one of Centene's subsidiaries. *Id.*  Class Members may make new requests for coverage of the drugs and be granted such coverage a maximum of two additional times.  *Id.*

In addition, any Class Member previously denied coverage for the hepatitis C drugs who is no longer a member of one of Centene's subsidiaries has the opportunity to enroll in an individual plan by a Centene-related entity in the Class Member's state.  *Id.*  Centene is not responsible for paying any Class Member's premium for enrollment in a Centene-related entity individual plan.  *Id.*  Other Class Members no longer covered by a Centene-related entity and uninsured, or that have no coverage of the hepatitis C drugs, or cannot enroll with a Centene-related entity, may submit a Claim through the administrator for a single payment of up to $2,200.00 per person.[3]  *Id.*  The Class Members may use the payment in any manner he or she

---

[3] The maximum payment amount is the estimated annual national out-of-pocket sales premium for bronze level health plan in 2018.  ECF No. [35–1] ¶ 3.

wishes.  Centene will pay on a claims-made basis up to a total of $125,000.00.  *Id.*  The parties estimate that the Settlement has a significant value, because if a Class Member were to buy a cure on the retail market, a single course of treatment would cost $94,000.00, for an aggregate value to the Class of $141 million.

The Settlement Agreement does not adversely affect any non-Class Members who are Centene policy holders and will not limit their future claims.  *Id.* ¶ 2.  If non-Class Members contract hepatitis C and their medical provider applies for pharmaceutical treatment, the same revised policy, not utilizing the fibrosis restriction scores, will apply to them.  *Id.*  Moreover, Centene-related entities, consistent with the intent of the Settlement, notified medical providers likely to order hepatitis C pharmaceuticals, such as hepatologists, gastroenterologists, and infectious disease practitioners of the change in policy so that it could be applied to Class Members and non-Class Members, alike.  *Id.*

In exchange, members of the Settlement Class agreed to release Centene from any and all past, present, or future claims, actions, demands, lawsuits, rights, liabilities, damages, losses, indebtedness, obligations, attorneys' fees, interest, expenses, costs, and causes of action, arising from Centene's denial of coverage for the hepatitis C drugs based on Centene's fibrosis restrictions, or from any claims asserted or which could have been asserted in this action.  *Id.* ¶ 7.

### C.  Attorneys' Fees and Expenses and Class Representative Service Award

Pursuant to the Settlement Agreement, Centene has agreed to pay—in addition to the cost of providing hepatitis C treatments and the monies in the claim fund—$350,000.00 in attorneys' fees and costs, which includes case-contribution service awards ("service awards") not to exceed $1,500.00 to each named plaintiff.  If any award is granted to Class Representative Plaintiffs M.D.,

C.F., or E.M, the amount to be paid in attorneys' fees and expenses shall be reduced by the total amount of that award.

### III. Class Notice

Rule 23(e) of the Federal Rules of Civil Procedure requires a court to "direct notice in a reasonable manner to all class members who would be bound" by the proposed settlement. Fed. R. Civ. P. 23(e)(1)(B). With regards to Rule 23(b)(2) classes, the Rule simply provides that the "court may direct appropriate notice to the class." Fed. R. Civ. P. 23(c)(2)(A).

In the Preliminary Approval Order, the Court approved the proposed Class Notice and found that it met the requirements of Rule 23 of the Federal Rules of Civil Procedure. ECF No. [44] ¶¶ 11–12. The Court ordered Centene's settlement administrator to begin dissemination of the Class Notice within thirty days of the entry of the Preliminary Approval Order. *Id.* ¶¶ 12, 27. The Notice alerted Class Members as to the details of the Settlement Agreement and explained how Class Members could object or opt-out. ECF No. [35-1] ¶ 3.

The Settlement Administrator, KCC Class Action Services, LLC ("KCC"), obtained a list of names with addresses of individuals who were identified as Settlement Class Members, processed the list through the National Change of Address database, and mailed 1,566 Notice packets by First-Class mail. ECF No. [53-1] ¶¶ 7–8. Of those, 228 Notice packets were returned as undeliverable. *Id.* ¶ 10. Of the 228 Notice packets that were returned, KCC successfully identified updated addresses and re-mailed the Notice packets to thirty of those addresses. *Id.* On November 27, 2019, KCC created a case-dedicated website for Settlement Class Members to obtain information about the Settlement. *Id.* ¶ 11. Specifically, the website provided Class Members with the full-length Notice, as well as relevant court documents, and important dates. *Id.* KCC also activated a toll-free number with live operator support, which allowed Settlement

Class Members to listen frequently asked questions and answers regarding the Settlement, leave a request to have a notice mailed to them, and speak with a live operator. *Id*. ¶ 12. Finally, on January 31, 2020, KCC mailed the requisite notice under the Class Action Fairness Act ("CAFA") to the U.S. Attorney General, the Attorneys General for each of the twenty -nine states where Class Members reside, and the parties of interest to this action. *Id*. ¶ 5. The deadline for the Class Members to opt-out or object was January 15, 2020. ECF No. [46-1] at 3. There were no objections and only one opt-out request. ECF No. [53] at 2, [53-1] ¶¶ 14–15.

Here, the Parties have complied with the notice provisions approved by this Court. *See* ECF No. [44] ¶¶ 11–12. No changes in the facts exist to alter the Court's previous conclusion, and as such, the Court finds that the notice provided in this case satisfied the requirements of due process and of Rule 23(c)(2)(A).

### IV. Certification of Settlement Class

The Court notes there have been no objections to class certification and no change in circumstances to alter the Court's previous determination that it was "likely" to certify the class based upon the evidence and argument presented. In its Preliminary Approval Order, the Court set forth in detail the reasons why it appeared that the prerequisites for certification pursuant to Rule 23(b)(2) were established. Based upon these same conclusions of law, the Court will certify the class for the reasons stated in its Preliminary Approval Order. ECF No. [44] ¶¶ 3–4.

### V. The Standards for Judicial Approval of Class Settlements and Certification of Settlement Class

Public and judicial policy both strongly favor pretrial settlement of litigation. This policy is particularly compelling in class actions and other complex litigation. *See In re United States Oil & Gas Litig.*, 967 F.2d 489, 493 (11th Cir. 1992) ("Public policy strongly favors the pretrial settlement of class action lawsuits."); *Lipuma v. Am. Express Co.*, 406 F. Supp. 2d 1298, 1314

(S.D. Fla. 2005) ("there exists 'an overriding public interest in favor of settlement, particularly in class actions that have the well-deserved reputation as being most complex'").  In reviewing a proposed settlement of a class action, the Court must find that there has been no fraud or collusion between the parties in arriving at the proposed settlement and that the proposed settlement is "fair, adequate and reasonable."  *Lipuma*, 406 F. Supp. 2d at 1314; *see also Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984); Rule 23(e)(2).

The Eleventh Circuit has outlined several factors that a court must consider in its determination of whether a proposed class-action settlement is fair, adequate, and reasonable:

> (1) the likelihood of success at trial;
> (2) the range of possible recovery;
> (3) the point on or below the range of possible recovery at which a settlement is fair, adequate, and reasonable;
> (4) the complexity, expense and duration of the litigation;
> (5) the substance and amount of opposition to the settlement; and
> (6) the stage of the proceedings at which the settlement was achieved.

*Bennett*, 737 F.2d at 986.  In weighing these factors, the Court may "rely upon the judgment of experienced counsel for the parties," and "absent fraud, collusion, or the like," is "hesitant to substitute its own judgment for that of counsel."  *See Canupp v. Liberty Behavioral Health Corp.*, 417 F. App'x 843, 845 (11th Cir. 2011) (citing *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977)).[4]

In addition, Federal Rule of Civil Procedure 23 provides a mandatory but non-exhaustive set of similar final approval criteria:

> (A) the class representatives and class counsel have adequately represented the class;
> (B) the proposal was negotiated at arm's length;
> (C) the relief provided for the class is adequate, taking into account:

---

Opinions of the Fifth Circuit issued prior to October 1, 1981 are binding precedent in the Eleventh Circuit.  *See Bonner v. City of Prichard*, 661 F.2d 1206, 1209-11 (11th Cir. 1981) (*en banc*).

.

> (i) the costs, risks, and delay of trial and appeal;
> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
> (iv) any agreement required to be identified under Rule 23(e)(3); and
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). The Court, as discussed more fully below, finds that the proposed Settlement is fair, adequate, and reasonable.

### A. Class Counsel and Plaintiffs Have Adequately Represented the Class.

The first factor that Federal Rule of Civil Procedure 23(e)(2) instructs courts to consider whether "the class representatives and class counsel have adequately represented the class." In the Preliminary Approval Order, the Court found that "the Parties consummated the Settlement after Class Counsel had duly investigated the issues raised by Plaintiffs' claims and the Parties had conducted arm's-length negotiations." ECF No. [44] ¶ 2. Based on the Court's review of the matter, finding no basis to alter its earlier conclusion, the Court finds that Class Counsel and Plaintiffs adequately represented the Settlement Class. As such, this factor favors the Settlement's final approval.

### B. The Settlement is the Product of Arms-Length Bargaining.

The Court must now determine that the Settlement Agreement is not a product of collusion between the parties. *See Leverso v. SouthTrust Bank of AL., Nat. Assoc.*, 18 F.3d 1527, 1530 n.6 (11th Cir. 1994). In doing so, the Court examines "whether the settlement was achieved in good faith through arms-length negotiations, whether it was the product of collusion between the parties and/or their attorneys, and whether there was any evidence of unethical behavior or want of skill or lack of zeal on the part of class counsel." *Berman v. Gen. Motors LLC*, No. 2:18-CV-14371, 2019 WL 6163798, at *4 (S.D. Fla. Nov. 18, 2019) (quoting *Canupp v. Sheldon*, No. 204-CV-260-

FTM-99DNF, 2009 WL 4042928, at *9 (M.D. Fla. Nov. 23, 2009) (citing *Bennett*, 737 F.2d at 987 n.9)).

The Court finds that there was no fraud or collusion.  The settlement negotiations between the parties lasted approximately six months following Centene's Motion to Dismiss on August 6, 2018, ECF No. [14], until the parties reached a settlement on February 26, 2019.  ECF No. [26]. There was substantial work completed on this case, including interviewing the Class Representatives, preparing pleadings, conducting extensive discovery, reviewing medical literature and speaking with experts, attending informal settlement negotiations, and overseeing and promoting the administration of the notice.  *See also* ECF No. [53-2] ¶ 10.  These efforts are evidence of the zealous representation and arms-length negotiations conducted by counsel to resolve a dispute where the parties held strongly differing opinions.  Both parties were adequately represented by qualified counsel, who were knowledgeable about the subject of the litigation. Indeed, Defendants' counsel is one of the leading firms in healthcare litigation and Class Counsel is also highly qualified and experienced in representing plainitffs in similar lawsuits.  *See Kondell v. Blue Cross & Blue Shield of Fla., Inc.*, 2016 WL 3554922, at 12 (S.D. Fla. May 9, 2016) (involving a class action against an insurer for denial of Harvoni coverage).  The record is absent of any evidence of unethical behavior or want of skill or lack of zeal.  Accordingly, this Court finds that the Settlement Agreement is not a product of collusion between the parties and is the product of arms-length bargaining.  This factor also favors the Settlement's final approval.

### C.  The Relief Provided for the Settlement Class is Adequate.

In the Eleventh Circuit, courts consider the following six *Bennett* factors in determining whether a settlement is fair, adequate, and reasonable: (1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which a

settlement is fair, adequate and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved. *Nelson v. Mead Johnson & Johnson Co.*, 484 F. App'x 429, 434 (11th Cir. 2012), *Lipuma*, 406 F. Supp. 2d at 1315; *see Bennett*, 737 F.2d at 986. "In assessing these factors, the Court 'should be hesitant to substitute . . . her own judgment for that of counsel.'" *Lipuma*, 406 F. Supp. 2d at 1315 (quoting *In re Smith*, 926 F.2d 1027, 1028 (11th Cir. 1991)). The Court finds that the Settlement Agreement is fair, adequate, and reasonable.

In assessing the first *Bennett* factor, likelihood of success at trial, Plaintiffs faced a real risk that their claims would be denied as moot given that Centene altered its coverage on July 1, 2018, after the filing of this lawsuit to remove any fibrosis restrictions. ECF No. [14] at 2, 4, 6. Specifically, in a similar action, the District Court held that Blue Cross and Blue Shield of Florida was under no contractual obligation to provide drug coverage for a hepatitis C drug because plaintiffs could not allege that they met *all* of the criteria, including a non-Metavir score, that would trigger coverage. *Kondell*, 187 F. Supp. 3d at 1355–56 (emphasis added). The court dismissed this cause of action with prejudice because the plaintiffs never alleged that they met the additional criteria under the policy. *Id.* at 1356. Given the similarity of both suits, Plaintiffs faced serious litigation risks if the matter had not been settled. As such, this factor weighs in favor of finding for the approval of the Settlement. *Perez v. Asurion Corp.*, 501 F. Supp. 2d 1360, 1381 (S.D. Fla. 2007) ("With the uncertainties inherent in pursuing trial and appeal of this case, combined with the delays and complexities presented by the nature of the case, the benefits of a settlement are clear.").

The strength of Defendants' Motion to Dismiss also impacts the second and third *Bennett* factors regarding the range of possible recovery and the point on or below the range of possible

recovery at which a settlement is fair, adequate, and reasonable.  Indeed, these two factors are easily combined.  *Saccoccio v. JP Morgan Chase Bank, N.A.*, 297 F.R.D. 683, 693 (S.D. Fla. 2014) (citing *Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 541 (S.D.Fla.1988)).  The less likely Plaintiffs are to succeed at trial, the greater their risk and the more leverage Defendants have to negotiate a lower recovery amount.  Here, despite the strength of Defendants' position, the parties estimate that the removal of the fibrosis restriction is worth at least $141 million.[5]  The Settlement also provides immediate relief because it allows for approximately up to 1,500 Class Members, as well as new enrollees and insureds who were deterred from seeking treatment due to the fibrosis restrictions, to promptly benefit from expanded coverage for the hepatitis C drugs.  ECF No. [53-2] ¶ 2.  These factors also weigh in favor of settlement approval.

The fourth factor—the complexity, expense, and duration of the litigation—also favors approval of the Settlement.  Plaintiffs and the Class faced hurdles in obtaining this relief, made apparent by Centene's attempt to dismiss the action.  *See* ECF No. [53-2] ¶¶ 9, 13.  Although the Settlement occurred before the Court ruled on Defendants' Motion to Dismiss, an unfavorable ruling would have significantly delayed obtaining relief for the Class, even if an appeal was expedited and successful.  "[T]he more complex, expensive, and time consuming the future litigation, the more beneficial the settlement becomes as a matter of efficiency to the parties and the Court."  *In re Citigroup Inc. Bond Litig.*, 296 F.R.D. 147, 155 (S.D.N.Y. 2013).  Continued litigation would have required the Parties and the Court to expend substantial resources litigating complex issues of law and fact, would have significantly delayed certain Class Members from receiving any relief (even if Plaintiffs were to prevail), and would have presented the wholly unacceptable (and very real) risk that at the end of the day, certain Class Members would not obtain

---

[5] The value of the Settlement at $141 million was calculated by multiplying the approximate costs of hepatitis C drug treatment of $94,000 per patient by 1,500, the number of Class Members.

coverage for a breakthrough treatment to cure their debilitating, degenerative, potentially fatal, and formerly incurable disease.

Regarding the fifth factor—the substance and amount of opposition to the settlement—the facts again tip in favor of finding the Settlement fair, adequate, and reasonable. After Notice was provided, there were no objections to the Settlement and only one opt-out request was received. ECF No. [53] at 2, [53-1] ¶¶ 14–15. This positive response from the Class Members evidences the fairness, reasonableness, and adequacy of the Settlement. *See Saccoccio*, 297 F.R.D. at 694 ("[A] low number of objections suggests that the settlement is reasonable . . . ."); *In re Motorsports Merch. Antitrust Litig.*, 112 F. Supp. 2d 1329, 1338 (N.D. Ga. 2000) ("The lack of objection . . . suggests the terms are satisfactory . . . ."). Secondly, the Court considers that Class Counsel joined in support of the Settlement Agreement. *See Nelson*, 484 F. App'x at 434 (citing *Cotton*, 559 F.2d at 1330 ("In considering the settlement, the district court may rely upon the judgment of experienced counsel for the parties."). Considering the response by the Class and Class Counsel, this factor weighs in favor of settlement approval.

Finally, the undersigned considers the sixth *Bennett* factor—the stage of the proceedings at the time that the settlement was reached—also weighs in favor of approval. The stage of the proceedings at which a settlement is achieved is "evaluated to ensure that Plaintiffs had access to sufficient information to adequately evaluate the merits of the case and weigh the benefits of settlement against further litigation." *Saccoccio*, 297 F.R.D. at 694 (quoting *Lipuma*, 406 F. Supp. 2d at 1324). Nevertheless, early settlements are favored and "vast formal discovery need not be taken." *Id.* In this case, Plaintiffs obtained their objective when Centene agreed not to reinstate the fibrosis restrictions and continued litigation would have only significantly delayed relief for Class Members who needed coverage for such breakthrough treatment.

13

Based upon on an evaluation of the six *Bennett* factors, the Court concludes that the Settlement Agreement is fair, adequate, and reasonable. Indeed, the Settlement Agreement provides Class Members with the very relief that caused them to initially file their Complaint. !

### D. The Settlement Treats Settlement Class Members Equitably Relative to Each Other.

The proposed Settlement treats members equitably relative to each other. Further, if non-Class Members contract hepatitis C and their medical provider applies for treatment, the same revised policy will apply to them. ECF No. [35-1] ¶ 2. Moreover, Centene-related entities have notified medical providers who are likely to order hepatitis C pharmaceuticals to notify them of the change in policy so that it can be applied to Class Members and non-Class Members alike. *Id.* As such, the Court finds that the Class Members are not only equitably treated as relative to each other, the Class Members are also treated equitably as to non-Class Members.

### E. There Were No Objections, and Only One Opt-Out to the Settlement.

There were no objections to the Court's preliminary approval of the Settlement, and no objections to final approval. ECF No. [53-1] ¶ 15. There was only one opt-out. ECF No. [53] at 2. This "low percentage of objections demonstrates the reasonableness of [the] settlement," and supports its approval as fair and reasonable. *Perez*, 501 F. Supp. 2d at 1381; *accord Saccoccio*, 297 F.R.D. at 694 ("low resistance" to settlement consisting of eight objections and 122 opt-outs supported approval).

### F. The Class Representative Service Awards Are Reasonable.

Plaintiffs seek service awards of $1,500.00 to each of the Class Representatives. ECF No. [35] ¶ 3. The Class Notice advised Class Members that Plaintiffs would apply for a service award in this amount and there were no objections to this request. ECF No. [53-1] ¶ 15. The Class Representatives have "acted as private attorneys general seeking a remedy for what appeared to

be a public wrong" and it is appropriate that these Plaintiffs be specially rewarded for their efforts. *Pinto v. Princess Cruise Lines, Ltd.*, 513 F. Supp. 2d 1334, 1344 (S.D. Fla. 2007).  In this case, Plaintiffs gave their time and provided essential documents to Class Counsel all while suffering from a debilitating and life-threatening disease.  The Court finds that the service award is appropriate.

### VI.    The Motion for Attorneys' Fees and Costs

"Both the United States Supreme Court and the Eleventh Circuit have expressly approved of calculating [attorneys'] fees by applying the percentage-of-recovery method to the total monetary value of the settlement."  *Montoya v. PNC Bank, N.A.*, 2016 WL 1529902, at *16 (S.D. Fla. 2016) (citing *Boeing v. Van Gemert*, 444 U.S. 472, 478 (1980), and *Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291, 1295–96 (11th Cir. 1999)); *see Camden I Condo. Ass'n v. Dunkle*, 946 F.2d 768 (11th Cir. 1991).  The Eleventh Circuit recently confirmed that class counsel's fee award also should be based on the value of "any non-monetary benefits conferred upon the class by the settlement," such as injunctive relief, as well as "the economics involved in prosecuting a class action."  *Poertner v. Gillette Co.*, 618 F. App'x. 624, 628 (11th Cir. 2015); *see David v. Am. Suzuki Motor Corp.*, 2010 WL 1628362 (S.D. Fla. 2010) (settlement with ascertainable benefits may be treated as a common fund to which a percentage fee may be awarded, even if the fee is separately paid by the defendant).  Thus, class counsel fees in a common-benefit settlement "shall be based on a reasonable percentage of the total benefit" the settlement provides to the class. *Poertner*, 618 F. App'x. at 628 (citing *Camden I*, 946 F.2d at 774).

Generally, the benchmark for a reasonable class counsel fee is considered between twenty to thirty percent, i.e., twenty five percent.  *Camden I*, 946 F.2d at 774.  This benchmark may be adjusted up or down based on the individual circumstances of each case, as well as using the factors

set forth in *Johnson v. Georgia Highway Express, Inc.*, 448 F.2d 714 (5th Cir. 1974). *See Camden I*, 946 F.2d 774–75; *Waters*, 190 F.3d at 1294 (affirming fee award of thirty-three and one third percent of a $50 million settlement, where the district court had used a thirty percent benchmark and adjusted it upwards); *see, e.g.*, *Gutter v. E.I. Dupont De Nemours & Co.,* 95–2152–Civ–Gold (S.D. Fla. May 30, 2003) (awarding a thirty-three and one third percentage ); *Waters*, 190 F.3d 1291 (affirming a thirty-three and one third percentage); *Tapken v. Brown*, No. 90-0691-CIV, 1992 WL 178984 (S.D. Fla. 1995) (affirming a thirty-three percentage); *In re Home Shopping Network Sec. Litig.*, No. 87-428-T-13(A) (M.D. Fla. 1991) (affirming a thirty-three percentage).

Here, Class Counsel seeks, and Defendant does not oppose, a fee award of $350,000.00, less than 0.3% of the monetary value of the Settlement's benefits to the Class which Class Counsel estimates is worth at least $141 million.[6]  ECF No. [53] at 13.  Although the request is considerably lower than the standard award, the Court finds the award reasonable under these circumstances and will grant the request.

First, the Court notes that the fee requested is an agreed upon amount and that no Class Members have objected to it.  Second, although the parties have estimated that the Settlement is worth at least $141 million, the parties conceded during argument before the Court that the actual value is likely to be less given that Centene had already changed their policy before the suit.  The exact number of the settlement value will only be known when the relief is fully provided.  Because the Court considers that the value of the Settlement is likely to be considerably less than $141 million, estimating a reasonable fee as a percentage from that number alone would not be appropriate.  A lower fee, as the parties have agreed to, is warranted.

---

[6] Class Counsel would receive this $350,000.00 sum less the $4,500.00 amount that would be deducted to make up the service awards of $1,500.00 given to each of the Class Representatives.

Third, the agreed upon fee is reasonable.  Class Counsel was uniquely positioned to handle this case with maximum efficiency.  Class Counsel capitalized on their previous experience successfully representing similar classes in two other Harvoni coverage cases, *Oakes v. Blue Cross & Blue Shield of Florida, Inc.*, No. 16-cv-80028 (S.D. Fla. 2016) (class action settlement provided approximately $126 million worth of coverage to over 2,000 insureds suffering from hepatitis C) and *Jones v. United Healthcare*, No. 15-cv-61144 (S.D. Fla. 2015) (class action settlement providing approximately $300 million worth of coverage to over 4,000 insureds suffering from hepatitis C).  A lower fee percentage is also supported by the fact that the parties reached a quick settlement, keeping Class Counsel's time and labor to a minimum.  The parties filed their Notice of Settlement less than nine months after Plaintiffs filed their Complaint.  ECF Nos. [1], [26]. Although the Court acknowledges that the case presented novel and complex questions of law, which would have required Plaintiffs to conduct significant discovery and increased expense and risks, the parties reached a resolution before these issues ripened and before costs escalated.

Finally, the Court notes that the results achieved in this case are similar to the results achieved in Class Counsel's two other settlements where the Court approved attorneys' fees to Class Counsel at 1.8% in *Oakes* and 0.98% in *Jones*.  As such, the Court concludes that the attorneys' fees and expenses of $350,000.00 is a reasonable award.

### VII. Final Approval Order and Decree

Upon consideration of the Motion, the arguments raised by the parties at the Preliminary Approval hearing and at the Fairness Hearing, as well as all matters of record, the Court finds that there is good cause to approve the proposed Settlement.  In accordance with the requirements of Rule 23(e), the Court concludes that the Settlement, including the award of attorneys' fees and service award to the Class Representatives, is fair, reasonable, and adequate.  Thus, the Court

determines that it is appropriate to grant the Motions.  Accordingly:

1. Plaintiff's Motion for Final Approval of Class Action Settlement, ECF No. [53], is **GRANTED**.

2. **Jurisdiction.**  Because due, adequate, and the best practical notice has been given and all potential settlement Class members have been given the opportunity to exclude themselves from or object to the Settlement, the Court finds and concludes that it has personal jurisdiction over all Settlement Class Members and that venue is proper.  The Court also finds and concludes that it has subject matter jurisdiction over this action, including, without limitation, jurisdiction to approve and enforce the Settlement, grant final certification to the Settlement Class, and dismiss the Action on the merits and with prejudice, all while retaining jurisdiction to enforce the Settlement as provided below.

3. **Final Class Certification.**  The Settlement Class is hereby finally certified for settlement purposes only, as it fully satisfies all the applicable requirements of Rule 23 and due process.  The Settlement Class is comprised of:

> [A]ll persons currently or formerly covered under any individual health insurance plan or policy with a medical benefit or prescription drug benefit (or both) insured or administered by any Centene-related Entity whose request for prior authorization for coverage of hepatitis C was denied based on a Metavir score or level of fibrosis between October 1, 2014, and December 31, 2018, who have not subsequently received direct acting antiviral therapy.

ECF No. [35-1] at 2.

4. **Final Settlement Approval.**  The Court approves the terms of the Settlement as being a fair, reasonable, and adequate resolution of the dispute between the parties.  The parties are hereby directed to implement and consummate the Settlement according to its terms and provisions.  The parties are also directed to take all steps necessary and appropriate to provide the Settlement Class Members with the benefits to which they are entitled under the Settlement.

5. **Binding Effect.**  The terms of the Settlement and of this Final Order and Judgment shall be forever binding on the Plaintiffs and all Settlement Class Members who did not timely exclude themselves from the Settlement Class as reflected in Paragraph 3 above, as well as their present, former and future heirs, guardians, assigns, executors, administrators, representatives, agents, attorneys, partners, legatees, predecessors, and/or successors.  The terms of the Settlement and of this Final Order and Judgment shall have *res judicata* and other preclusive effect in all pending and future claims, lawsuits or other proceedings maintained by or on behalf of any such persons or entities, to the extent those claims, lawsuits or other proceedings involve matters that were or could have been raised in the Action or are otherwise encompassed by the Settlement's Release.

6. **Release.**  The Court hereby approves, incorporates and adopts the Release set forth in Paragraphs six through eight of the Settlement.  ECF No. [35-1] ¶¶ 6–8.  The Release hereby is made effective as of the Effective Date, and will forever discharge the released parties of and from any liability to the Plaintiffs and the Settlement Class Members, as well as their present, former and future heirs, guardians, assigns, executors, administrators, representatives, agents, attorneys, partners, legatees, predecessors, and/or successors, arising in whole or in part from the Released Class Claims as defined in the Settlement.

7. **Retention of Jurisdiction.**  Without in any way affecting the finality of this Final Order and Judgment, the Court expressly retains jurisdiction: (a) as to the administration, consummation, enforcement, and interpretation of the Settlement, including the Release, and the Final Order and Judgment; (b) to resolve any disputes concerning settlement Class membership or entitlement to benefits under the terms of the Settlement; and (c) over all parties hereto, including members of the Settlement Class, for purposes of enforcing and administering the Settlement and this Action generally, until each and every act agreed to be performed by the parties has been performed in

accordance with the Settlement.

8. **No Admissions.** Neither this Final Order and Judgment, nor the Settlement, nor any other document referred to herein, nor any action taken to carry out this Final Order and Judgment, is, may be construed as, or may be used as an admission or concession by or against the released parties as to the validity of any claim or defense or any actual or potential fault, wrongdoing, or liability. Entering into or carrying out the Settlement, and any negotiations or proceedings related to it, shall not in any event be construed as, or deemed evidence of, an admission or concession as to the released parties' denials or defenses, and shall not be offered or received in evidence in any action or other tribunal for any purpose whatsoever, except as evidence to enforce the provisions of the Settlement and this Final Order and Judgment; provided, however, that the Settlement and Final Order and Judgment may be filed in any action brought against or by the released parties to support a defense of *res judicata*, collateral estoppel, release, waiver, good-faith settlement, judgment bar or reduction, full faith and credit, or any other theory of claim preclusion, issue preclusion or similar defense or counterclaim.

9. **Attorneys' Fees and Incentive Award.** Plaintiffs' Motion for Approval of Attorneys' Fees and Incentive Award, ECF No. [53] is **GRANTED**. The Court approves the agreed attorneys' fees and expense award to Class Counsel in the amount of $350,000.00, to be paid pursuant to the terms of the Settlement Agreement. The Court also finally approves the payment of $1,500.00 to each Class Representatives as a service award, to be paid pursuant to the terms of the Settlement Agreement.

10. **Final Order and Judgment.** This Final Order and Judgment fully and finally disposes of all claims stated on a representative (class) basis by the Class Representatives against Defendants in this action. All Class Claims having been resolved as provided herein, the Court

20

finds that there is no just reason for delay in entry of final judgment on the class claims pursuant to Federal Rule of Civil Procedure 54(b).  Indeed, the Court finds that it is in the best interest of the Settlement Class to have a Final Judgment entered at this time and not to have entry be delayed. Therefore, this Order shall constitute the Final Order and Judgment as to all class claims in this action, and the Clerk is directed to enter a Final Judgment accordingly.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 12th day of June, 2020.

JACQUELINE BECERRA
United States Magistrate Judge